**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MEDSERV INTERNATIONAL, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-05-3173 |
| MICHAEL ROONEY | * | |
| Defendant. | * | |

*****

**MEMORANDUM OPINION**

In this action, MedServ International, Inc. ("Plaintiff" or "MedServ"), a refurbisher of medical equipment, seeks to enforce a non-compete agreement against Michael Rooney ("Defendant" or "Rooney"), one of its former sales representatives. In his answer to MedServ's complaint, Rooney asserts counterclaims for breach of contract, tortious interference with existing and prospective contractual and business relations, unfair competition, unfair and deceptive trade practices in violation of Massachusetts statutory law, and unjust enrichment. Rooney also asserts third-party claims of tortious interference and unfair competition against L. Fond Koo ("Koo") and Deborah Barker ("Barker"), MedServ's President and Vice President of Sales and Marketing, respectively. Presently pending before the Court is a motion by MedServ, Koo, and Barker to dismiss the third-party claims and all but one of the counterclaims [27]. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For reasons set forth more fully below, MedServ's Motion to Dismiss will be granted-in-part and denied-in-part.

**I.      FACTUAL & PROCEDURAL BACKGROUND**

Although the facts of this case have been set forth in previous memorandum opinions, the Court will briefly restate the facts relevant to the instant motion. MedServ is a Maryland corporation "engaged in the business of servicing, repairing, and refurbishing medical equipment and devices for medical providers nationwide." (Compl. ¶ 5.) In 1998, Rooney, a resident of Massachusetts, became a MedServ Business Associate, responsible for identifying potential MedServ customers and maintaining MedServ's ties with its existing clientele. MedServ and Rooney executed a Business Associates Agreement (the "Agreement"), which provided that Rooney was to be MedServ's exclusive sales associate in the New England area (specifically, eastern Massachusetts, Rhode Island, and southern Connecticut) and that he would receive a commission of 23% on the gross invoice price of all orders received and delivered into his sales territory. The Agreement also contained restrictive covenants that prohibited Rooney, for one year following his termination, from competing with MedServ, disclosing MedServ's trade secrets, or contacting MedServ's customers.

On November 1, 2005, Rooney terminated his employment relationship with MedServ. MedServ alleges that prior and subsequent to his termination, Rooney violated the Agreement's non-compete covenant by soliciting customers on behalf of FiberTech Medical U.S.A. ("Fibertech"), a direct competitor of MedServ. Rooney responds that MedServ breached the Agreement by unilaterally lowering his commission and by forming and operating a separate corporation, Endosurg Medical ("Endosurg"), which allegedly hired sales associates to compete with Rooney in his exclusive territory.

On November 17, 2005, MedServ filed a complaint in the Circuit Court for Montgomery County, Maryland, seeking damages and emergency injunctive relief. On November 23, 2005, the case was removed to this Court on the basis of diversity jurisdiction. On December 27, Rooney filed

an answer to the complaint in which he asserted counterclaims against MedServ and third-party claims against Koo and Barker. On February 7, 2006, MedServ, Koo, and Barker moved to dismiss the third-party claims and all but one of the counterclaims.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), dismissal of a complaint for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

## III.    ANALYSIS

MedServ urges that the Court dismiss Counts II, III, IV, and V of Rooney's counterclaims, as well as both third-party claims against Koo and Barker, on the ground that the aforementioned claims are merely attempts to convert an alleged breach of contract into a variety of tort claims.[1] The challenged claims allege that MedServ committed Tortious Interference With Existing and Prospective Contractual and Business Relationships (Count II), Unfair Competition (Count III), Unfair and Deceptive Trade Practices in Violation of Massachusetts General Law, M.G.L. c. 93A §§ 2, 11 (Count IV), and Unjust Enrichment (Count V). In addition, Koo and Barker seek dismissal

---

[1] MedServ does not seek dismissal of Count I of Rooney's counterclaims, which asserts a breach of contract claim.

of third-party claims alleging Tortious Interference With Existing and Prospective Contractual and Business Relationships (Count I) and Unfair Competition (Count II).

    A.    <u>Count II: Tortious Interference With Existing and Prospective Contractual and Business Relationships</u>

In this count, Rooney alleges that MedServ "unlawfully interfered with Rooney's business relationships and opportunities by hiring two salespersons (employed and trained by Rooney) to compete in Rooney's territory in the name of Endosurg without notice to Rooney . . . ." (Rooney's Answer ¶ 22.)

Tortious interference "is committed when a third party's intentional interference with another in his or her business or occupation induces a breach of an existing contract or, absent an existing contract, maliciously or wrongfully infringes upon an economic relationship." *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 117. (Md. 1994). Here, Rooney does not allege that MedServ induced the breach of a specific, existing contract, but rather interfered with his "business relationships" and "opportunities." When asserting a claim under this latter, "prospective contracts" theory of the tort, the plaintiff must show: "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiff[] in [his] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damages and loss resulting." *K & K Mgmt. v. Lee*, 557 A.2d 965, 973 (Md. 1989).

Rooney's allegations do not withstand MedServ's motion to dismiss. That MedServ may have harmed Rooney's business relationships is not alone sufficient to sustain his tortious interference claim. Under Maryland law, Rooney must also show that MedServ's conduct in interfering with contract or business relations was accomplished through "improper means."

4

*Spengler v. Sears, Roebuck & Co.*, 878 A.2d 628, 642 (Md. Ct. Spec. App. 2005); *see also Lyon v. Campbell*, 707 A.2d 850, 860 (Md. Ct. Spec. App. 1998) (explaining that in order to recover for tortious interference with contract or business relationships, the defendant's conduct must be "*independently wrongful or unlawful*, quite apart from its effect on the plaintiff's business relationships") (emphasis added). The types of "improper means" that give rise to a tortious interference claim have been limited to "violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Volcjak v. Washington County Hosp. Ass'n*, 723 A.2d 463, 513 (Md. Ct. Spec. App. 1999) (quoting *K & K Mgmt.*, 723 A.2d at 979).

Rooney's failure to allege that MedServ's conduct was independently wrongful or unlawful, apart from its violation of the terms of the Agreement, is fatal to his tortious interference claim. Rooney has not alleged that MedServ's breach of the Agreement was accompanied by violence, intimidation, defamation, or fraud. At bottom, Rooney alleges that MedServ violated the exclusivity provisions of the Agreement by secretly hiring two salespersons to compete against him in his exclusive sales territory. This alleged conduct is "wrongful or unlawful" only to the extent that it may conflict with the terms of the Agreement; it is not an independent tort and, consequently, cannot sustain a claim for tortious interference with business or contractual relations. *See Volcjak*, 723 A.2d at 513 (tortious interference claim properly dismissed where plaintiff "alleged no wrongful conduct by the [defendant], other than the breach of its contract with him"); *K & K Mgmt.*, 557 A.2d at 980 (no tortious interference where defendant's conduct was unlawful "exclusively in the sense that it was a breach of contract"). As a result, Count II will be dismissed.

    B.    <u>Count III: Unfair Competition</u>

Under Maryland law, the common law tort of unfair competition extends "to all cases of unfair competition in the field of business." *Baltimore Bedding Corp. v. Moses*, 34 A.2d 338, 342 (Md. 1943); *Elecs. Store, Inc. v. Cellco P'ship*, 732 A.2d 980, 991 (Md. Ct. Spec. App. 1999). Unfair competition is broadly defined:

> What constitutes unfair competition in a given case is governed by its own particular facts and circumstances. Each case is a law unto itself, subject, only, to the general principle that all dealings must be done on the basis of common honesty and fairness, without a taint of fraud or deception.

*Baltimore Bedding Corp.*, 34 A.2d at 342. A claim for unfair competition can encompass "damaging or jeopardizing another's business by fraud, deceit, trickery, or unfair methods of any sort." *Id.*

In the instant case, Rooney's unfair competition claim is grounded on the same allegations as his tortious interference claim: that MedServ, operating in the name of its subsidiary, Endosurg, hired away two of Rooney's salespeople to secretly compete against him in his exclusive territory. Although the Court found that this alleged conduct was insufficient to sustain a cause of action for tortious interference, the Court cannot reach the same conclusion with respect to a claim for unfair competition. Courts have emphasized the broad scope of the conduct actionable under this tort. *See Southern Volkswagen, Inc. v. Centrix Financial*, LLC, 357 F. Supp. 2d 837, 852 (D. Md. 2005) (noting that dismissal of unfair competition claim "does not automatically follow" from the dismissal of underlying tort and antitrust claims because "this Court has consistently delineated the parameters of this tort in a very broad manner"). Indeed, while a claim for tortious interference with economic relations requires the commission of some independently wrongful or unlawful act, *Lyon*, 707 A.2d at 860, "Maryland case law has never required an unlawful act as an essential element of an unfair competition claim." *Trimed, Inc. v. Sherwood Medical Co.*, 977 F.2d 885, 891 (4th Cir.

6

1992). Instead, the controlling legal principles "are simply the principles of old-fashioned honesty. One man may not reap what another has sown, nor gather where another has strewn." *GAI Audio of New York, Inc. v. Columbia Broadcasting Sys., Inc.*, 340 A.2d 736, 748 (Md. Ct. Spec. App. 1975) (quoting *J.I. Case Plow Workers v. J.I. Case Threshing Machine Co.*, 155 N.W. 128, 134 (Wis. 1915)).

Here, the Court finds that Rooney's allegations of dishonest conduct on the part of MedServ are sufficient to survive a motion to dismiss. In reaching this conclusion, the Court finds *Electronics Store, Inc. v. Cellco Partnership*, 732 A.2d 980 (Md. Ct. Spec. App. 1999), to be instructive. In *Electronic Store*, the plaintiff, a cellular phone service company that had agreed to act as a sales agent for the defendant, Bell Atlantic, sought to sign up a local credit union as a client. Bell Atlantic rejected the proposed sale, explaining that it did not "do credit unions," only to subsequently bypass its sales agent and enter into a direct agreement with the credit union. *Id.* at 987. The Maryland Court of Special Appeals concluded that if a jury found Bell Atlantic to be "deceitful in telling [the plaintiff] that it did not 'do credit unions,' then it could find that Bell Atlantic committed the common law tort of unfair competition involving deceit." *Id.* at 992. In the present case, Rooney alleges that although the Agreement provided that he was to be the exclusive sales representative in the New England area, MedServ established a separate corporation, Endosurg, to compete with Rooney in his sales territory. In addition, Rooney alleges that MedServ hired away two salespersons, whom Rooney had employed and trained, to compete against him and that MedServ actively sought to keep its activities hidden from Rooney. Accepting the truth of these allegations, and viewing them in the light most favorable to Rooney, the Court finds that he has stated a claim for unfair competition under Maryland common law.

      C.      <u>Count IV: Unfair and Deceptive Trade Practices in Violation of M.G.L.c. 93A § 11</u>

In this count, Rooney asserts a claim under Massachusetts Unfair Trade Practices Act ("MUTPA"), which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws. ch. 93A, § 2. Although MedServ, in its motion to dismiss, contends that Count IV of Rooney's counterclaims should be dismissed, MedServ does not specifically address any of the relevant provisions of MUTPA**,** nor does it argue that Rooney has failed to state a claim under that statute. Instead, MedServ (presumably) relies on its general argument that Rooney impermissibly seeks to transform a contract action into one sounding in tort. However, courts have made clear that breach of contract "'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party " may give rise to MUTPA liability. *Ahern v. Scholz*, 85 F.3d 774, 798 (1 st Cir. 1996) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 821 (Mass. 1991)); *see also Ocean Spray Cranberries, Inc. v. PepsiCo, Inc.*, 160 F.3d 58, 63 n.3 (1st Cir. 1998). In addition, as discussed above, this Court has already concluded that Rooney has stated a claim for unfair competition under Maryland common law.

Thus, because MedServ has not specifically challenged liability under MUTPA, because the statute appears to encompass claims based on some underlying breach of contract, and because the Court has upheld Rooney's common law unfair competition claim, MedServ's motion to dismiss shall be denied with respect to Count IV.

      D.      <u>Count V: Unjust Enrichment</u>

Rooney also asserts a quasi-contractual claim for unjust enrichment, grounded on the same allegations that underlie his tort claims. Unjust enrichment is a form of restitution. It provides that

"[a] person who receives a benefit by reason of an infringement of another person's interest, or of a loss suffered by the other, owes restitution to him in the manner and amount necessary to prevent unjust enrichment." *Berry & Gould v. Berry*, 757 A.2d 108, 113 (Md. 2000). However, when the relationship between parties is governed by an express contract, quasi-contractual claims such as unjust enrichment are not permitted. *See County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 610 (Md. 2000); *see also Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*, 284 F. Supp. 2d 284, 288 n.2. (D. Md. 2003) ("It is well-settled law in Maryland that a claim for unjust enrichment may not be brought where the subject matter of the claim is governed by an express contract.") Here, there is an express contract between Rooney and MedServ governing the same subject matter upon which Rooney's unjust enrichment claim rests. As a result, the Court will dismiss Rooney's claim for unjust enrichment.

  E.  Third-Party Claims Against Koo and Barker

Rooney also asserts third-party claims against MedServ officers Koo and Barker. In particular, Rooney asserts claims of tortious interference (Count I) and unfair competition (Count II). However, as previously discussed, a claim for tortious interference with prospective economic relations will only lie where the plaintiff alleges interference through "improper means," which Maryland courts have limited to "violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Volcjak,* 723 A.2d at 513. Thus, Rooney's allegations that Koo and Barker (1) established Endosurg to compete with Rooney, in violation of the exclusivity provisions of the Agreement, and (2) interfered with MedServ's obligation to pay Rooney his 23% commission, are inadequate to sustain a claim for tortious interference. In addition, with respect to this latter

9

allegation, Maryland courts have rejected the contention that corporate officers acting within the scope of their authority can be held liable for tortiously interfering with business relations between their corporation and the plaintiff. *See K & K Mgmt.*, 723 A.2d at 981 n.14.

As for Rooney's third-party claim of unfair competition, the Court has already noted that this tort encompasses a much broader range of conduct than an action for tortious interference, including "deceit, trickery, or unfair methods of any sort," *Baltimore Bedding Corp.*, 34 A.2d at 342, and that MedServ could, conceivably, be found liable for unfair competition if it promised Rooney an exclusive sales territory and then surreptitiously established a subsidiary company to compete with Rooney for sales that were rightfully his. The issue, however, is whether Koo and Barker can be held personally liable for this alleged conduct. While the doctrine of corporate immunity ordinarily shields corporate officers from liability for the corporation's actions, "officers of a corporation [are] personally liable for *torts* of the corporation in which they actively participated." *Curtis G. Testerman Co. v. Buck*, 667 A.2d 649, 653 (Md. 1995). Here, Rooney asserts that Koo and Barker personally directed and participated in MedServ's allegedly tortious conduct. Consequently, the Court will deny the motion to dismiss with respect to Rooney's third-party unfair competition claim.

## III.    CONCLUSION

For all the aforementioned reasons, MedServ, Koo, and Barker's Motion to Dismiss [27] shall be granted-in-part and denied-in-part. The motion shall be GRANTED with respect to Counts II and V of Rooney's Counterclaims, and Count I of Rooney's Third-party claims. The motion shall be DENIED with respect to Counts III and IV of Rooney's Counterclaims, and Count II of Rooney's Third-party claims. An Order consistent with this Opinion will follow.

Date: <u>June 28, 2006</u>                                       /s/
                                                                  Alexander Williams, Jr.
                                                                  United States District Judge